## KROLLMAN LUMBER CO. v HILLENBRAND et

Common Pleas Court, Hamilton Co.

No. A-65049. Decided Jan. 10, 1940.

Davies, Hoover & Beall, Cincinnati, for plaintiff.

Andrew C. Gallagher, Maurice W. Jacobs, Edwin Becker, William R. Collins, David F. Naylor, Walter Sibbald, John C. Grant, Bolsinger & Hoodin, J. Warren Dells, Cobb, Schott, Tieman & Neyer and William H. Fry, of Cincinnati, for various defendants.

### OPINION

By OUTCALT, J.

The question of consequence before the court for decision in this case is one of priorities between the liens of a mortgagee, whose mortgage by terms attempts to secure the benefits provided by §8321-1, GC, and of certain materialmen who have filed liens in accordance with the general provisions of the mechanic's lien law of the state.

A review of the history of mechanic's liens in this state will serve no purpose here. It is pertinent, however, to note briefly the history of §8321-1, and the conditions which led to its enactment. In 1913 the Legislature of this state amended the existing laws so as to provide that any mortgages given or recorded after the commencement of the excavation, construction, or improvement should be junior to all mechanics' liens upon the job, and that a mortgagee took his mortgage subject to the liens of all lienholders who furnished labor or material for the excavation, construction, or improvement regardless of whether the same was furnished before or after the mortgage was re-

corded. As our Supreme Court observed, this had the effect of stopping building operation entirely, unless a method were to be devised whereby the improvement could be finished by means of a mortgage loan secured after the work had commenced. Apparently with this in mind the Legislature enacted §8321-1.

The testimony in this case is such as to make it clear to the court that at the time the mortgage was filed for record it was reasonably apparent to the mortgagee that the excavation had actually and obviously commenced. Therefore, to be prior to the liens of materialmen filed upon the same property, it is essential that the mortgage contain the covenants required by the statute, the mortgagee's address, and that distribution of the mortgage fund be shown to have been made in accordance with the requirements of the statute, 26 O. Jur. 886; Rider v Crobaugh, 100 Oh St 88.

Here the formal requirements of the mortgage demanded by the statute have been met, the only question is whether distribution of the mortgage fund was made in accordance with the provisions of §8321-1.

It appears from the evidence that the owners signed a number of orders for the distribution of the fund, in blank, and that these orders were subsequently filled in by the mortgagee without knowledge on the part of the owner. In no case was there any certificate by the owner that any payment was required to meet labor payrolls.

Payments were made to the contractor, Fred Hillenbrand on February 24, March 4, 10 and 24, and on April 5, aggregating $3205.90. Similar payments were made to sub-contractors John Bucalo, H. Motz & Sons and William Moser in the amounts respectively, $368.00, $94.10 and $108.35.

Coincident with the payments so made by the mortgagee, affidavits and certificates in the form suggested by §8312, GC, were filed with the mortgagee and during the trial of the case were offered in evidence. Examination discloses that these recite the capacity of the payee as contractor or subcontractor, and, in each case, upon oath duly administered, declare that all labor claims had been paid in full.

Were these payments made in accordance with the requirements of §8321-1? This section sets forth the order of distribution of the fund as follows:

First. The mortgagee may at any time pay off a prior encumbrance, or withhold the amount thereof for that purpose.

Second. The mortgagee may withhold of the remainder sufficient funds to complete the improvement according to the original plans and specifications, and within the original contract price.

Third. "Such mortgagee may from time to time pay out on the owner's order, directly to contractor or subcontractor, or to the owner himself if he is his own contractor, such sums as said owner may certify to be necessary to meet and pay labor payrolls for said improvement."

Fourth: The mortgagee shall pay out upon the owner's order, directly to materialmen or laborers who have performed labor or furnished material for the improvement. In case no order is given, the mortgagee shall retain an amount sufficient to cover the claim, until the amount be judicially determined, or the parties agree.

Fifth: The mortgagee shall pay the balance of the fund, after the improvement is completed, to the owner, or his order.

The payments made to Hillenbrand, Bucalo, Motz and Moser were not in payment of a prior encumbrance. Counsel urges that Bucalo and Moser were laborers, and that payments to them were payments of labor claims. There is no evidence to support this contention, rather, the evidence is that they were subcontractors and had paid all laborers working for them before payment was requested.

Therefore, it is clear that it must be established that these payments come within the provisions of Sec. 3 of the

permitted order of distribution, that they were payments to meet and pay labor payrolls, or to the extent of those payments the lien of the mortgagee will be junior to valid liens of contractors, subcontractors, materialmen and laborers.

"In case said mortgagee pay out said fund otherwise than as hereinbefore provided, then the lien of said mortgagee shall be subsequent to liens of contractors, subcontractors, materialmen and laborers." §8321-1, GC.

"If the mortgagee pays out on the owner's order money to contractors or subcontractors for purposes other than meeting labor payrolls, he is paying out in violation of the act." 26 O. Jur. 888.

Payments to contractors are not authorized in the permitted order of distribution. Attention has been called to the history of this section, and the observation of the Supreme Court that the Legislature in its enactment was moved by an effort to correct a defect in the lien law of this state. Can we escape the conclusion that the Legislature did not wish, or failed for some reason to provide for any payments to contractors before the completion of the improvement, that the legislature concluded that contractors should provide their contribution on credit, and should be paid only on the completion of the improvement? It would seem clear that no payment from the fund to contractors is authorized by §8321-1, except upon order and certificate that such payment is necessary to meet labor payrolls.

But it is claimed that these payments were to reimburse contractors for sums already paid out on their labor payrolls. Passing the absence of the certificate required by the statute, this is not a novel proposition, but is a claim which has been previously made in, and denied by the courts of this state. This proposition was advanced in the case of Ulmer, et v Portage Construction Co., et 26 O. N. P. (N.S.) 257, (Aff. Court of Appeals, June 4, 1925; motion to certify overruled 24 O. L. R., 322), and there the court said at page 319 of the report:

"Attention has already been directed to the fact that the Act makes no provision for the payment of any money by the mortgagee to the contractors and subcontractors, and therefore no claims of payment made during the course of construction to contractors and subcontractors can be justified under this section.

We have left Sub-section Number 3, which provides:

'Such mortgagee may from time to time pay out on the owner's order, directly to contractors or subcontractors, or to the owner himself if he is his own contractor, such sums as said owner may certify to be necessary to meet and pay labor payrolls for said improvement.'

The owner may do two things, namely: he must order the payment and he must certify that the sums ordered paid are necessary to meet and pay labor payrolls for said improvement. Manifestly, this does not include reimbursing the owner and contractors for sums already paid by them on their labor payroll."

It is the conclusion of this court likewise that the Act does not contemplate or authorize payments to contractors to reimburse them for payments already made by them in satisfaction of labor payrolls, and that such payments are without the permitted and authorized order of distribution.

But counsel contends that it is necessary in the furtherance of business to construe this act of the Legislature so as to include classes of payees whom the Legislature did not include. This may or may not be so; if so, the attention of the Legislature and not of the courts should be directed to the omission. It is not necessary to state that the courts are without the power to amend the act of the Legislature. No

rule has been cited which would authorize the construction requested by this statute, and that construction will not be given.

One who seeks the priorities extended by §8321-1 must comply with the requirements of the statute, the benefits of which he seeks. No authorization is there given for the payment of any money to contractors or subcontractors, except those sums necessary to meet labor payrolls, or ▮▮▮▮▮▮▮▮ from the balance of the fund after the completion of the improvement.

An entry may be presented in accordance herewith.